IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL LEE HUSTON, SR., | ) | CASE NO. 1:25-CV-01865-JRA |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | MAGISTRATE JUDGE |
| ADMINISTRATION, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, Michael L. Huston, Sr. ("Plaintiff" or "Huston"), challenges the final decision of Defendant, Frank J. Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying his applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

In April 2023, Huston filed an application for POD and DIB, alleging a disability onset date of August 1, 2019, and claiming he was disabled due to degenerative disc disease, chronic back pain, fall risk, bipolar, and spondylothestesis.  (Transcript ("Tr.") 74, 78.)  The applications were denied initially and upon reconsideration, and Huston requested a hearing before an administrative law judge ("ALJ").  (*Id*. at 91, 97, 100.)

---

[1] On May 7, 2025, Frank J. Bisignano became the Commissioner of Social Security.

On September 17, 2024, an ALJ held a hearing, during which Huston, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id*. at 32-60.)  On September 27, 2024, the ALJ issued a written decision finding Huston was not disabled.  (*Id*. at 17-31.)  The ALJ's decision became final on July 11, 2025, when the Appeals Council declined further review.  (*Id*. at 1.)

On September 8, 2025, Huston filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 7, 8, 9.) Huston asserts the following assignment of error:

1.  Whether the ALJ's Step Two finding that Plaintiff's degenerative disc disease is a non-severe impairment is supported by substantial evidence.

(Doc. No. 7 at 9.)

## II. EVIDENCE

### A.    Personal and Vocational Evidence

Huston was born in 1971 and was 53 years-old at the time of his administrative hearing (Tr. 74), making him a "person closely approaching advanced age" under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).  He has an eleventh-grade education.  (Tr. 40.)  He has no past relevant work. (*Id*. at 57.)

### B.    Relevant Medical Evidence[2]

On December 17, 2019, Huston had a CT scan due to suspected pneumonia. (*Id*. at 330.) The CT results noted central disc protrusions at L3-L4 and L4-L5, without significant associated canal stenosis, moderate to severe foraminal stenosis on the right at L4-L5, mild foraminal stenosis on the left at L4-L5 and on the right at L5-S1, moderate foraminal stenosis on the left at L5-S1, and bilateral hip osteoarthritis. (*Id*. at 330-31.)

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

On June 7, 2021, Huston presented for an evaluation of his low back pain. (*Id*. at 285.) He reported chronic and ongoing low back pain with bilateral radiculopathy, and bilateral hip and groin pain. (*Id*.) He stated he could only stand for ten minutes before needing to sit. (*Id*.) He described doing no recent physical therapy or pain management in the past two years, and that prior physical therapy was not helpful. (*Id*. at 286.) He reported smoking two packs of cigarettes per day and drinking between 15 and 25 beers per day. (*Id*.) Physical examination revealed slow gait, unable to walk heel tow, 5/5 strength in all extremities and was otherwise unremarkable. (*Id*.) Huston was provided a referral for physical therapy and pain management. (*Id*.)

On April 13, 2022, Huston presented to Dr. James Chillcott, who he had not seen in many years, with complaints of low back pain that radiates to his legs. (*Id*. at 472.) Huston mentioned pain in the upper thoracic spine, numbness and tingling in his right arm and at the ulnar border of his left hand, and numbness and tingling in both feet. (*Id*.) Physical examination was normal except for periorbital edema with fluid accumulation below the eyes bilaterally, slurring speech, and spasms, tenderness and decreased range of motion in the lumbar back. (*Id*. at 273.)

On May 27, 2022, Huston presented to the emergency department with an abnormal blood test for sodium. (*Id*. at 482.) Physical examination was unremarkable, and no abnormal musculoskeletal findings were noted. (*Id*. at 484.) He was diagnosed with hyponatremia. (*Id*. at 486.)

On June 6, 2022, Huston presented for a follow up appointment after his emergency department encounter for low sodium. (*Id*. at 502.) He complained of back pain. (*Id*. at 504.) Physical examination was normal, including normal gait. (*Id*.)

On June 7, 2022, Huston was admitted to the hospital for hyponatremia. (*Id*. at 316.) Physical exam of musculoskeletal systems was positive for weakness and negative for decreased range of motion, pain, swelling, and stiffness. (*Id*. at 317.) Other findings were unremarkable. (*Id*.)

On July 25, 2022, [3] Huston returned to Dr. Chillcott for a follow up appointment. (*Id*. at 580.) He complained of pain in the right lower back radiating down the leg to the right kneed and pain in his right groin. (*Id*.) Dr. Chillcott noted a history of obstructive sleep apnea, high triglycerides and low HDL, and a history of alcohol abuse. (*Id*.) Huston reported cutting back from 30 beers per day to 15. (*Id*.) Physical examination was normal except for bony tenderness over the right L4-5 and L5-S1 facet joints, and decreased range of motion and tenderness in the right hip. (*Id*. at 583.)

On July 27, 2022, Huston had a lumbar spine X-ray. (*Id*. at 557.) The impression was "multilevel lumbar spine degenerative changes, most pronounced at L5-S1 with severe disc space narrowing and progressed from 11/17/2011. Grade 1 anterolisthesis of L5 on S1 in the setting of chronic bilateral L5 pars defects." (*Id*. at 558.)

On June 13, 2023, Huston presented for a follow up to an emergency department visit due to hyponatremia. (*Id*. at 608.) He was referred to physical therapy and pain management but stated he would not go to either because they want him to quit drinking and smoking. (*Id*. at 609-610.)

On August 2, 2024, Huston presented to Dr. Chillcott for a follow up visit. (*Id*. at 918.) Dr. Chillcott noted a history of profound alcohol abuse associated with severe hyponatremia and his failure to complete the requested lab work. (*Id*.) Huston reported severe chronic low back pain that radiates down both legs to the feet, making it painful to cough, sneeze, or bend. (*Id*.) He stated he cannot bend or stoop or crawl or left more than five pounds occasionally. (*Id*.) Dr. Chillcott noted he has a history of tobacco abuse, drinks excessive amounts of beer daily, and it not willing to quit smoking or drinking. (*Id*.) Physical examination was unremarkable except he looked "unwell with marked facial swelling." (*Id*. at 921.)

---

[3] The Court notes Huston's alleged disability onset date is August 1, 2019 and his date last insured is June 30, 2022, making the relevant period between those two dates. Evidence falling outside the relevant period is of limited relevance. *Gore v. Comm'r of Soc. Sec..,* No. 5:20-CV-341, 2021 WL 3673196, at *4 (N.D. Ohio Aug. 19, 2021)(citing *Lorrison v. Berryhill*, No. 18-cv-10289, 2019 WL 1324247, at *6 (E.D. Mich. Mar. 25, 2019).

On August 2, 2024, Dr. Chillcott completed a Medical Statement – Physical Abilities and Limitations form. (*Id*. at 912.) Dr. Chillcott opined Huston could stand for less than 15 minutes at a time and less than 60 minutes total in a workday; could sit for less than 15 minutes at one time and for two hours total in a workday; and could lift five pounds occasionally. (*Id*.) He categorized Huston's pain as severe and thought he would be absent more than three times per month due to his impairment. (*Id*.)

On August 2, 2024, Dr. Chillcott completed a form titled Off-Task/Absenteeism Questionnaire. (*Id*. at 913.) He opined Huston would be off task at least twenty percent of the time and absent about four times per month. (*Id*.) Dr. Chillcott wrote Huston was likely to be off task due to cognitive impairment from hyponatremia, impaired concentration, intractable low back pain radiating down both legs, and frequent drowsiness and fatigue. (*Id*.)

## C.    State Agency Reports

### 1.    Mental Impairments

On September 5, 2023, Sonya Adamo, Psy.D., reviewed the claim file and stated, "There is no evidence. There is no MDI [medically determinable impairments]." (*Id*. at 76.)

On February 5, 2024, on reconsideration, Audrey Todd, Ph.D., affirmed Dr. Adamo's insufficient evidence finding. (*Id*. at 81-82.)

### 2.    Physical Impairments

On August 29, 2023, Lynne Torello, M.D., reviewed the claim file and found there was insufficient evidence to evaluate Plaintiff's "physical impairments and the limitations they may have caused from the time he stated he became disabled until the last day he was insured for benefits." (*Id*. at 75.)

On February 3, 2024, on reconsideration, Kathy Horava, D.O., reviewed additional records and revised the assessment to reflect Huston's diagnoses, but found insufficient medical evidence to evaluate

5

the severity of Huston's condition prior to the date last insured. (*Id*. at 81.) Dr. Horava affirmed Dr. Torello's finding. (*Id*.)

## D.     Hearing Testimony

During the September 17, 2024 hearing, Huston testified to the following:

• He lives with his wife and lived with her during the relevant period. (*Id*. at 39.) He was 53 years old at the time of the hearing and 48 to 51 during the relevant period. (*Id*. at 39-40.) He has an eleventh-grade education. (*Id*. at 40.) He does not have a driver's license. (*Id*. at 40.) He lost his license in the 1980s due to failure to control his vehicle. (*Id*.) He does not do any volunteer work. (*Id*. at 41.) He does not have any form of income including benefits or assistance. (*Id*.) The last time he worked was 2019. (*Id*.) He worked a couple of jobs in 2017 and 2018 that were short-lived. (*Id*. at 42.) He did not work full-time between 2017 and 2022. (*Id*. at 43.) He was "hurting so bad" that he could not do his job and quit. (*Id*.)  He and his wife moved to a trailer in 2022 because he could no longer handle steps. (*Id*. at 52.) The pain in his back goes down into his legs and causes his legs to give out. (*Id*. at 52-53.) He fell in the shower several times and got a shower chair and handles for the shower. (*Id*. at 53.) The back pain is constant. (*Id*. at 54.) He broke his back in the 1980s and the pain has been getting worse since then. (*Id*.) He uses a chair cushion that helps with his pain when sitting. (*Id*. at 55.) He thinks he could lift about five pounds. (*Id*.) He has a cane and a walker that were prescribed by a doctor. (*Id*. at 56.)

• For treatment of his back pain, he saw chiropractors, went to his doctor, and saw several specialists but was denied surgery due to his smoking. (*Id*. at 44.) The only treatment that helped was a prescription for Tramadol. (*Id*.) He experiences fluttering in his heart that affects his ability to work. (*Id*.) He was on a medication that slows his heart down and lowers his blood pressure. (*Id*.) He has low sodium. (*Id*. at 44-45.)

• During the relevant period he took Ibuprofen and Tramadol, which helped a little and he was able to do some household chores. (*Id*. at 45.) He did not buy groceries; he was able to cook for a short period and then he'd have to sit down. (*Id*. at 45-46.) He did not do laundry because the basket was too heavy. (*Id*. at 46.) He occasionally would take out the trash. (*Id*.) His wife would clean the house and do yard work, but now the property manager takes care of the yard work. (*Id*.) On a typical day, he would sit and watch TV, let his dogs out, and play music. (*Id*. at 47.)  He was drinking 15 to 20 beers daily. (*Id*. 51.) He cut his drinking to 12 beers per day. (*Id*.) His drinking "doesn't affect [his] ability to do anything." (*Id*.) His drinking is not giving him any health problems, except for "a little bit of a fatty liver." (*Id*. at 51-52.)

The ALJ explained Huston has no past relevant work.  (*Id*. at 57.)  The ALJ then posed the following hypothetical question:

> And we've determined earlier that there's no past relevant work to consider for the last five years since the date last insured for Mr. Huston. So with that in mind I'm going to ask Mr. Cody if you can please assume an individual of Mr. Huston's age, education and the work experience.
>
> And if you can please assume that this hypothetical individual can perform medium work. Will you please advise, are there jobs for such an individual with these limitations then?

(*Id*. at 57.)

The VE testified the hypothetical individual would be able to perform other representative jobs in the economy, such as packer, cleaner, and material handler. (*Id*. at 57-58.) Huston's attorney asked:

> So if somebody was limited to light work but could only lift a maximum of five pounds. If they could never crawl, never bend or, and occasionally stoop.
>
> And if they could frequently reach in all directions bilaterally and never be exposed to unprotected heights, moving mechanical machinery. Would there be any job that somebody could do with those limitations?

(*Id*. at 58.) The VE responded that there would be jobs, but they would be reduced range of sedentary work activity due to the lifting limitation. (*Id*.) Huston's attorney asked if someone was consistently absent three days per month whether there would be any work. (*Id*.) The VE answered in the negative and explained that being absent two days per month or more on a routine basis precludes sustainable work activity. (*Id*.)

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

7

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Huston was insured on the alleged disability onset date, August 1, 2019, and remains insured through June 30, 2022, the date last insured ("DLI").  (Tr. 17, 19, 74.) Therefore, in order to be entitled to POD and DIB, Huston must establish a continuous twelve-month period of disability commencing between

these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2022.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 1, 2019 through his date last insured of June 30, 2022 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following medically determinable impairments: disorder of the skeletal spine (degenerative disc disease of the lumbar spine), essential hypertension, other disorder of the gastrointestinal system (hyponatremia), osteoarthrosis and allied disorders (degenerative joint disease of the bilateral hips), and substance addiction disorders (SAD), alcohol (alcohol dependence/abuse) (20 CFR 404.1521 et seq.).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 et seq.).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2019, the alleged onset date, through June 30, 2022, the date last insured (20 CFR 404.1520(c)).

(Tr. 19-27.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)."  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

9

Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

In his first assignment of error, Huston argues the ALJ's step two finding that Plaintiff's degenerative disc disease is a non-severe impairment is not supported by substantial evidence. (Doc. No. 7 at 9.) Huston contends the ALJ's finding is not supported by substantial evidence because it "mischaracterized the content of Plaintiff's physical examination findings with respect to range of motion and gait and because the ALJ's decision altogether ignored evidence of the functional effects of his degenerative disc disease." (*Id*. at 12.) Huston states the evidence show progressive degenerative disc disease, with imagining showing worsening over time. (*Id*. at 12-13.) Huston contends physical exams reveal abnormal gait and range of motion. (*Id*. at 13.) Huston claims the medical records include evidence regarding intensity, frequency, and duration of his back pain and its effect on his ability to perform basic work activities of standing and walking. (*Id*.) Huston argues the ALJ failed to recognize the evidence of the intensity, frequency, and duration of his back pain. (*Id*. at 14.)

In response, the Commissioner argues substantial evidence supports the ALJ's determination that Huston's degenerative disc disease was not severe. (Doc. No. 8 at 3.) The Commissioner points out that the ALJ found Huston's degenerative disc disease a medically determinable impairment and concluded that it

11

did not significantly limit his ability to perform basic work-related activities for twelve consecutive months. (*Id*.) The Commissioner notes that in support of her determination, the ALJ cited several examinations with unremarkable findings, Huston's failure to pursue referrals to pain management and physical therapy, and the opinions of the state agency reviewing physicians finding insufficient evidence to support Huston's claim that his degenerative disc disease was a severe impairment during the relevant time period. (*Id*. at 4-5.)

In his reply brief, Huston argues the objective evidence alone is enough to establish a severe medically determinable impairment. (Doc. No. 9 at 1.) Huston contends the records contain radiological evidence of progressive spinal stenosis that meets the twelve-month durational requirement and was considered severe. (*Id*. at 2.)

At Step Two of the sequential analysis, claimant has the burden of proving he or she has a severe medically determinable impairment, in order to establish disability within the meaning of the Act. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). A "severe" impairment, according to Social Security regulations, is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Nevertheless, "[a]t step two 'significant' is liberally construed in favor of the claimant[, but] [t]he regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (6th Cir. 2007); *see also* 20 C.F.R. § 416.920a(d)(1). "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

"[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* The mere diagnosis of a condition does

12

not mean a claimant suffers from a severe impairment. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (applicant for disability insurance benefits under Title II did not show she suffered from a "severe impairment" before her disability insurance benefits coverage lapsed despite diagnosis); see also *Crady v. Secretary of Health and Human Services,* 835 F.2d 617, 620-21 (6th Cir.1987) (per curiam) (no severe knee impairment where, among other factors, no evidence of restricted motion and only "minor" degeneration established by x-ray); *Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461, 464 (6th Cir.1987) (per curiam) (no severe back or leg impairment where pain severity not recorded, motion restriction unquantified, and x-rays revealed "mild" abnormalities).

Here, at Step Two, the ALJ found Huston did not have a severe impairment or combination of impairments. (Tr. 20.) The ALJ wrote,

> In reaching the conclusion that the claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p.

(*Id*.) The ALJ performed a detailed symptom analysis, considering Huston's allegations and testimony. (*Id*. at 20-21.) The ALJ concluded:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision.
>
> The conclusion that the claimant does not have an impairment or combination of impairments that significantly limited his or her ability to perform basic work activities prior to the date last insured is consistent with the objective medical evidence and other evidence. Specifically, the objective medical evidence of record fails to establish the existence of a severe medically determinable impairment prior to the date last insured of June 30, 2022.

13

(*Id*. at 21.) The ALJ wrote several pages detailing Huston's relevant medical records. (*Id*. at 21-24.) Despite imaging noting central disc protrusions, inability to heel or toe walk, and slow gait, the ALJ discussed several examinations with generally unremarkable findings, including normal gait, full strength in arms and legs, normal straight leg raises, normal extremities, and normal musculoskeletal and neurological findings. (*Id*. at 22-23.) The ALJ pointed out Huston failed to pursue the referrals he received for physical therapy and pain management. (*Id*. at 22.) "[I]f a claimant does not follow the prescribed treatment without a good reason, the SSA regulations indicate that the claimant will not be found disabled." *Newman v. Comm'r of Soc. Sec.*, No. 5:22-CV-01982, 2023 WL 7092886, at *18 (N.D. Ohio Sept. 20, 2023) (citing 20 C.F.R. § 404.1530(b)), *report and recommendation adopted,* No. 5:22-CV-01982, 2023 WL 7048737 (N.D. Ohio Oct. 26, 2023); see also *Graham v. Comm'r of Soc. Sec.*, No. 1:23-CV-00574-JDA, 2024 WL 580969, at *11 (N.D. Ohio Feb. 13, 2024) (non-compliance with physical therapy is an appropriate factor that the ALJ may rely upon). The ALJ also considered the opinion evidence, noting the state agency physicians found insufficient evidence of severe impairment, and Dr. Chillcott's check-box forms inadequately supported and completed years after Huston's date last insured. (Tr. at 24, 25.) Substantial evidence supports the ALJ's conclusion. There is no error.

While Huston interprets the records differently, the findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772-73 (6th Cir. 2001). In the Sixth Circuit an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: June 30, 2026                                    *s/ Jonathan Greenberg*
                                                       Jonathan D. Greenberg
                                                       United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**